**SHERMAN ASSOCIATES, Richard Suisman, Plaintiff,**

v.

**Dr. Heinz–Deiter KALS, Defendant.**

**Civ. No. 3:94CV00742 (PCD).**

United States District Court,
D. Connecticut.

May 10, 1995.

recently resolved a similar claim without resolving the issue now before the court.

Kerry Marc Wisser, Peter Rustin, Weinstein & Wisser, P.C., West Hartford, CT, for Sherman Associates, Richard Suisman.

Stephen G. Silverberg, West Hartford, CT, Lewis J. Roberts, Rabinowitz, Roberts & Silverberg, South Glastonbury, CT, for Dr. Heinz–Deiter Kals, Buro Fur Kommunale Planund und Wirtschaftsforderung GMBH.

Lewis J. Roberts, Rabinowitz, Roberts & Silverberg, South Glastonbury, CT, for Gertrude Kals.

### RULING ON DEFENDANTS' MOTION TO DISMISS

DORSEY, Chief Judge.

Plaintiffs bring this diversity action to recover damages alleged to have resulted from fraud and violation of Connecticut Unfair Trade Practices Act ("CUTPA") C.G.S. § 42–110a, et seq. Defendant moves to dismiss for lack of personal jurisdiction pursuant to F.R.Civ.P. 12(b)(2).

### I. FACTS

Plaintiffs, Sherman Associates and Richard Suisman, allege the following facts. Defendant, a German national, came to Connecticut in December, 1990, specifically to meet with plaintiffs. The meeting took place at Bradley International Airport in Windsor Locks, Connecticut. Plaintiffs discussed a real estate redevelopment project with defendant at that meeting. The property for redevelopment was, The Colonial Theater (hereinafter "Theater"), located in Hartford, Connecticut. Based on his representations plaintiffs engaged defendant as a broker to obtain financing for the project. Defendant was to arrange a loan of $4.5 million and to receive

$300,000 in commission if the loan was arranged successfully.

Thereafter, defendant arranged a meeting between plaintiffs and a German bank in New York. After this loan application was denied, defendant further represented that he could arrange the loan from the bank's headquarters in Germany. Defendant then caused the plaintiffs to send $150,000 to him, to be used as part of a security deposit required by the bank while reviewing the loan application. A letter of agreement was signed by both plaintiffs and defendant in June, 1991, describing their respective obligations. Plaintiffs were later informed that defendant had retained both an engineering company and an accounting firm, to evaluate the project. Defendant obtained plaintiff's approval for certain payments to be made for 'due diligence' costs to the parties evaluating the project. In September, 1991, defendant met with plaintiffs in New York and informed them that their loan application had again been rejected. Thereafter, defendant offered to fund the project personally and mailed a letter describing his intent to acquire the "Theater" property in a partnership arrangement with plaintiff Suisman.

Defendant agreed to refund $75,000 of the original $150,000 and to hold the remaining $75,000 to cover the due diligence costs incurred in the loan application. Defendant promised verification of the evaluation studies which plaintiffs never received, although they were informed that all of the $75,000 had been used to cover these costs. Upon subsequent investigation plaintiffs learned that the specified engineering company had never been employed by the defendant and that the accounting company had gone out of business in October, 1990. Plaintiffs, then, initiated this action to recover damages.

## II. DISCUSSION

In diversity cases a challenge to the court's jurisdiction over a non resident defendant requires a two step inquiry: (1) whether personal jurisdiction is appropriate under the forum state's long-arm statute and (2) whether the exercise of jurisdiction comports with due process. *Greene v. Sha–Na–Na*, 637 F.Supp. 591, 595 (D.Conn.1986). The burden

of establishing jurisdiction over the defendant is upon the plaintiff, however, the plaintiff need only make a prima facie showing that jurisdiction exists. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 768 (2d Cir. 1983). In the absence of an evidentiary hearing or a trial on the merits, all pleadings and affidavits are construed in the light most favorable to the plaintiff. *Id.*

### A. Long–Arm Statute

Since the allegations contained in the complaint and the affidavit of plaintiff Suisman, must be accepted as true for the purposes of this motion, the only determination to be made is whether they bring the defendant within the scope of Conn.Gen.Stat. § 52–59b and satisfy due process. The statute provides in pertinent part:

(a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non resident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1) Transacts any business within the state ...

Conn.Gen.Stat. § 52–59b(a)(1).

The term "transacts any business" has been construed "to embrace a single transaction of a business nature." *Gandolfo v. Alford*, 31 Conn.Supp. 417, 423, 333 A.2d 65 (1975). This broad interpretation "is not unreasonable so long as jurisdiction extends only to causes of action arising from that act." *Id.* at 423, 333 A.2d 65.

In determining whether defendant, Kals', contacts constitute transacting business within the state, we do not apply a rigid formula but balance considerations of public policy, common sense, and the chronology and geography of the relevant factors. *Zartolas v. Nisenfeld*, 184 Conn. 471, 477 (1981). Defendant solicited the plaintiff's business by coming to Connecticut. He was to act as a broker in obtaining financing for the "Theater" project and entered into an agreement with the plaintiffs, whereby he would receive a commission of $300,000. Defendant was in constant contact with plaintiffs for a ten month period, sending numerous letters, fax-

es and making many telephone calls to Connecticut during this time. Defendant also induced plaintiffs to send $150,000 to his bank account in Germany, purportedly to facilitate obtaining a loan. This money was sent from Connecticut and defendant requested plaintiff's approval to use it to pay costs of the parties evaluating the redevelopment project.

After this second loan application was denied defendant proposed financing the "Theater" project himself and offered to purchase the property in partnership with plaintiff Suisman. The property which was the focus of these business endeavors was located in Connecticut and any loans obtained would have been secured by that property. Had he been successful in obtaining the loan, defendant would have been paid his commission by the plaintiffs in Connecticut. Defendant relies on the rule that "the transmission of communications ... does not by itself constitute transaction of business in the forum state." *Bross Utilities Service Corp. v. Abdulla Fouad A. Aboubshait,* 489 F.Supp. 1366, 1372 (1980). However, the instant case is distinguishable from *Bross* because the defendant came into the forum state to meet with plaintiffs and initiated the business relationship. It is, therefore, not unreasonable to say that defendant engaged in a business transaction within Connecticut. Consequently, defendant's extended dealings with plaintiffs, are sufficient to bring him within the Connecticut long-arm statute, especially since the plaintiff's cause of action arises directly out of the same acts.

### B. *Due Process*

Defendant's contacts with Connecticut must also be scrutinized to determine whether they meet constitutional due process requirements.

[I]t is the totality of the defendant's conduct and connections with the case that must be considered, on a case by case basis, to determine whether the defendant could reasonably have anticipated being haled into court here. *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 [100 S.Ct. 559, 567, 62 L.Ed.2d 490] (1980); *Kulko v. California Superior Court,* 436 U.S. 84, 92, 97–98 [98 S.Ct. 1690, 1696, 1699–1700, 56 L.Ed.2d 132] (1978); *Hanson v. Denckla,* 357 U.S. 235, 251, 253 [78 S.Ct. 1228, 1238, 1239, 2 L.Ed.2d 1283] (1958); *International Shoe Co. v. Washington,* 326 U.S. 310, 316 [66 S.Ct. 154, 158, 90 L.Ed. 95] (1945).

*Lombard Bros. v. General Asset Management Co.,* 190 Conn. 245, 255, 460 A.2d 481 (1983).

Whether exercise of personal jurisdiction comports with due process depends upon whether the defendant has established "minimum contacts in the forum state." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). Minimum contacts requires that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 475, 105 S.Ct. at 2183.

Defendant's contacts with Connecticut are sufficient for the exercise of personal jurisdiction over him consistent with the due process clause of the Constitution. Defendant came to Connecticut with the specific intention of meeting the plaintiffs and soliciting the business relationship which led to this litigation. Thus, he was protected by the laws of the forum "in a direct physical sense." *See Agrashell, Inc. v. Bernard Sirotta Co.,* 344 F.2d 583, 588 (1965). Following this meeting defendant engaged in a prolonged series of communications with plaintiffs via telephone and the mails. Defendant pursued this business relationship, volunteering alternative methods of obtaining financing for the "Theater" project when each loan was denied. Defendant induced plaintiffs to send $150,000 from Connecticut, which plaintiffs did, in good faith, and in reliance on the defendant's representations. Thus defendant purposefully derived benefit from these contacts and if he had successfully obtained financing for the project he would have been paid his $300,000 commission. Therefore, it is proper for this court to assert specific jurisdiction over defendant because he has "purposely directed his activities at residents of the forum ... and the litigation results from alleged injuries that "arise out of or relate to" those activities." *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181

(citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

Defendant's purposefully established minimum contacts within the forum must also be evaluated to determine whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2183 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). Here, the defendant was a sophisticated businessman who did not act under duress or any disadvantage imposed by the plaintiffs. Where the defendant has come into the state and solicited business it would be unfair to prevent the plaintiffs from obtaining relief, by allowing the foreign defendant to defeat jurisdiction and thus, to avoid having to account for consequences that arise from his activities within the state.

"[W]here a defendant who purposely has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184. Defendant has not presented any reasons that would render jurisdiction unreasonable in these circumstances. Whereas, plaintiffs would be at a severe disadvantage if they had to pursue their claim in a German court, because of the differences in language, legal system and the expense of litigating in a foreign country. Moreover, a "defendant who purposely avails himself of the privilege of doing business in a state should reasonably expect that he could be. haled into that state's court." *Harris v. Wells*, 832 F.Supp. 31, 35 (D.Conn.1993) (citing *Burger King*, 471 U.S. at 472–73, 105 S.Ct. at 2181–82.) Therefore, this courts jurisdiction over the defendant is proper.

### III. *CONCLUSION*

Accordingly, defendant's motion to dismiss (doc. 10) is denied.

SO ORDERED.