**TITAN SPORTS, INC., etc., Plaintiff,**

v.

**TURNER BROADCASTING SYSTEMS, INC., World Championship Wrestling, Inc., and Eric Bischoff, Defendants.**

No. CIV.3:96CV01139(PCD).

United States District Court, D. Connecticut.

July 10, 1997.

Opinion Granting Reconsideration October 14, 1997.

Mary A. Gambardella, Epstein, Becker & Green, P.C., Stamford, CT, Jerry McDevitt, Franklin B. Molin, Kirkpatrick & Lockhart, Pittsburgh, PA, for Plaintiff and Counter–Defendant.

David Dunn, Jeanne Edna Thelwell, Davis, Scott, Weber & Edwards, New York City, NY, James T. Shearin, Sheila Anne Denton, Pullman & Comley, Bridgeport, CT, for Defendants and Counter–Claimants.

DORSEY, Chief Judge.

### RULING ON MOTION TO DISMISS

Defendants Turner Broadcasting Systems, Inc., ("TBS"), World Championship Wrestling, Inc. ("WCW") and Eric Bischoff ("Bischoff") (collectively referred to as "Defendants") move to dismiss Counts I, II, V, VII, VIII, and XI of the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). The motion to dismiss Counts I, II, V, and XI is **DENIED.** The motion to dismiss Counts VII and VIII is **GRANTED.**

### I. BACKGROUND FACTS

The following facts alleged in the Amended Complaint are taken as true. Titan Sports, Inc., etc., ("Plaintiff") is a Delaware corporation with its principal place of business in Connecticut. Plaintiff promotes live, and on cable, syndicated, and pay-per-view television, professional wrestling under its registered service mark "World Wrestling Federation" ("WWF").

TBS is a Georgia corporation which owns and operates several cable networks, including Turner Network Television ("TNT") and WTBS. WCW is a Georgia corporation and a majority owned subsidiary of TBS. WCW competes directly with WWF in televising professional wrestling, associated merchandising, and licensing programs. Bischoff is a citizen of Georgia, an officer and employee of TBS, in charge of WCW's operations and serves as a television announcer for WCW programming.

Plaintiff contends that success in the professional wrestling business depends upon the development of interesting wrestling characters and story lines. Characters must

have names, personalities, histories, relationships, personas, and visual appearances that appeal to consumers. Plaintiff alleges that WWF programming combines character-driven story lines with skillful wrestling while WCW has no reputation for creativity. TBS proposed interpromotional matches in order to associate WCW with WWF, but Plaintiff rejected this idea.

After wrestling unsuccessfully with WCW, Scott Hall contracted to wrestle for Plaintiff. Plaintiff created a wrestling character for Hall called "Razor Ramon," alias "The Bad Guy," with a distinctive Hispanic accent, slicked back hair in a ponytail with a curl in the front, a toothpick in his mouth, a vest, and multiple chains around his neck. Plaintiff registered the service mark "Razor Ramon" with the U.S. Patent and Trademark Office. The contract provided that Plaintiff retained exclusive ownership of the character's name and likeness and the exclusive right to distribute copyrightable materials based on the character. Hall warranted that he would not enter other agreements conflicting with Plaintiff's contract rights.

Plaintiff developed Razor Ramon into one of its most popular characters. He has appeared in television broadcasts, live events, a two-hour videotape, several magazines, and is the subject of merchandise devoted to the character. He won WWF's Intercontinental Championship at least four times. The character is well-recognized by wrestling fans.

Plaintiff developed another character using wrestler Kevin Nash who wrestled unsuccessfully with defendant WCW. Nash and Plaintiff entered into a contract with provisions similar to Hall's contract. Nash's character was "Diesel," alias "Big Daddy Cool." Diesel's trade dress included a goatee beard and moustache, black leather pants, a black leather vest decorated with silver studs and tassels, a black low cut tank-top shirt, a black fingerless glove on the right hand, black elbow pads, black wrist bands, sunglasses, and black leather boots. Diesel is visibly different from the characters previously portrayed by Nash at WCW.

Diesel was added to Plaintiff's story lines and appeared in television broadcasts, commercial videotapes, magazines, and became the subject of merchandise. Like Razor Ramon, Diesel also became widely recognized and popular, winning the WWF Heavyweight Championship in 1995.

In 1993, Plaintiff promoted Razor Ramon and Diesel on its "Monday Night Raw" television program, which was broadcast weekly at 9:00 p.m. EST. In 1995, defendant TBS began broadcasting a competing program "WCW Monday Nitro" at the same time. Plaintiff alleges that TBS's broadcast continually disparaged WWF, while WCW agents circulated false rumors of Plaintiff's impending bankruptcy in order to lure wrestlers to WCW.

In 1996, enticed by WCW's promise of lucrative, guaranteed contracts, Hall and Nash contracted to wrestle with WCW. After the contracts were executed, Plaintiff alleges that defendant Bischoff planned to capitalize on the goodwill of the Razor Ramon and Diesel characters. Hall and Nash were to appear on WCW's broadcast as Razor Ramon and Diesel, supposedly representing WWF in an interpromotional battle. Before the broadcast, WCW's 900 hotlines told consumers that Razor Ramon and Diesel were considering leaving WWF for WCW, although in reality, they had already done so.

Defendants expanded the introductory broadcast to two hours, starting before Plaintiff's competing broadcast. Hall appeared in the persona of Razor Ramon, although the broadcast did not refer to him by name. The end of the broadcast falsely conveyed that interpromotional matches would thereafter air on TNT. Fans sent letters evidencing their presumption that Hall was performing as Razor Ramon for WWF on TNT. Plaintiff attempted to dispel the rumors by broadcasting that Hall and Nash were no longer associated with the WWF. Nevertheless, Hall appeared on two further WCW broadcasts, perpetuating the false presumption. Bischoff also indicated that the interpromotional matches would be seen on an upcoming pay-per-view program. Hall and Nash did appear on the pay-per-view program as the characters Razor Ramon and Diesel. Defendants, however, did not refer to them by any name.

**68**

## II. DISCUSSION

Defendants move to dismiss Counts I, II, V, VII, VII, and XI of the Amended Complaint. A motion to dismiss should be granted only when "it appears beyond a doubt" that a plaintiff fails to state any claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) All facts alleged in the complaint are presumed to be true and are considered in the light most favorable to the non-movant. *Williams v. Avco Lycoming*, 755 F.Supp. 47, 49 (D.Conn.1991).

### A. Copyright Infringement (Counts I and II)

In Counts I and II of the Amended Complaint, Plaintiff alleges copyright infringement of the characters Razor Ramon and Diesel. Defendants move to dismiss Counts I and II as they pertain to Plaintiffs Diesel character on the basis that Plaintiff failed to plead sufficient character development to establish a copyrightable character.

■ To establish copyright infringement Plaintiff must prove: (1) ownership of a copyright; and (2) that the Defendants copied the protected material. *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir.1996) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991)). Copyright registration is *"prima facie* evidence of the valid ownership of a copyright.... " *Rogers v. Koons*, 960 F.2d 301, 306 (2d Cir. 1992), *cert denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). The owner of a copyright in various works embodying a character can acquire copyright protection for the character itself *Warner Bros. Inc. v. Am. Broad. Co. Inc.*, 720 F.2d 231, 235 (2d Cir.1983) ("[p]laintiffs own the copyrights in various works embodying the character Superman and have thereby acquired copyright protection for the character itself") (citation omitted); *New Line Cinema Corp. v. Bertles-*

*man Music Group, Inc.*, 693 F.Supp. 1517, 1521 n. 5 (S.D.N.Y.1988) ("[b]ecause [the plaintiff] has valid copyrights in the Nightmare series, it is clear that it has acquired copyright protection as well for the character of Freddy") (citing *Warner Bros.*, 720 F.2d at 235).

■ A plaintiff, however, must still demonstrate that the character was "distinctively delineated in the plaintiff's work, and such delineation was copied in the defendant's work." 1 Melville B. Nimmer, *Nimmer on Copyright* § 2.12, at 2–172.34 (1996).[1] The protection is limited to the character as defined by performances in the copyrighted works. "[O]nly a uniquely developed character with some degree of novelty is copyrightable." *Jones v. CBS, Inc.*, 733 F.Supp. 748, 753 (S.D.N.Y.1990). " '[T]he less developed the characters, the less they can be copyrighted ....' " *Williams*, 84 F.3d at 589 (citation omitted). *Accord: Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir.1980), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980) (copyright law does not protect " 'characters ... which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.' ") (citations omitted).

■ Plaintiff does not have a registered copyright in the character Diesel. Plaintiff has obtained copyright registration in numerous broadcasts, videos, and magazines in which its Diesel character has appeared. Am. Compl. ¶ 129; Ex. C. Defendants contend, however, that Plaintiff has failed to plead that the character of Diesel exhibits the uniqueness or distinctiveness necessary to obtain copyright protection. Plaintiff sufficiently alleges that the Diesel character is a developed and distinctive character worthy of copyright protection. Plaintiff described in detail Diesel's trade dress, costumes, hair color, and style, all of which were unique among wrestlers and recognizable by wrestling fans. *Id.* ¶¶ 41–42. Plaintiff devoted almost three pages of the Amended Com-

**1.** Although the language in *Warner Bros.* suggests that if a plaintiff owns a valid copyright in a work the plaintiff automatically obtains a copyright in the characters, all characters embodied in a copyrighted work are not necessarily pro-

tected. Instead, the character still must be sufficiently developed in the work to be worthy of copyright protection. To hold otherwise would provide copyright protection to any insubstantial and undeveloped character.

plaint to explaining how the Diesel character developed into a fully independent character and ultimately became integral to the story lines of many televised events. *Id.* ¶¶ 41–50. Construing all allegations in favor of plaintiff, it cannot be said that there is no set of facts upon which relief could be granted to Plaintiff. Defendants' motion to dismiss Counts I and II is denied.

### B. Service Mark Infringement (Count V)

 Defendants move to dismiss Count V on the basis that Plaintiff has failed to allege actual use by Defendants of the mark "Razor Ramon."

Section 32 of the Lanham Act prohibits the "*use* in commerce [of] any reproduction, counterfeit, copy, or colorable imitation *of a registered mark* in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) (1988) (emphasis added). A service mark is "any word, name, symbol, or device . . . to identify and distinguish the services of one person . . . from the services of others and to indicate the source of the services. . . ." *Id.* § 1127.[2] A "registered trademark[ ][is] presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 871 (2d Cir. 1986) (citations omitted).

A *prima facie* case of infringement under Section 32 "is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product." *Id.* at 871 (citation omitted). The confusion requirement is satisfied if the use of the mark deceives the public into believing that the trademark owner sponsored or otherwise approved of the use of the mark or was in some way connected with the allegedly infringing use. *Dallas Cowboys, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 205 (2d Cir.1979).

Plaintiff alleged actual use of its registered trademark on three occasions. After Hall had allegedly already signed on with the WCW, Defendants used Plaintiff's trademark on its 900 hotline in discussing whether "Razor Ramon" was leaving the WWF and whether he would join the WCW. Am. Compl. ¶¶ 69, 70, 73. Standing alone, Defendants' alleged use of the mark may be insufficient to establish trademark infringement under Section 32. However, Plaintiff alleges that Defendants' use of its mark was part of their overall scheme to defraud the public into believing that an "interpromotional" warfare was going to take place and that the WWF had challenged WCW wrestlers to matches on TNT. *Id.* ¶¶ 67, 109. Plaintiff alleges that wrestling fans were confused or deceived into believing that Hall was still wrestling for Plaintiff, when in reality he was performing for Defendants, and that the WCW had sponsored or was otherwise connected or affiliated with the match and WCW. *Id.* ¶ 121. Defendants thereby capitalized on the goodwill and value of Plaintiff's trademark. *Id.* ¶ 65.

Construing all inferences in Plaintiff's favor, Plaintiff has sufficiently alleged a claim for infringement to withstand a motion to dismiss. Defendants' motion to dismiss Count V is denied.

### C. Tortious Interference with Contractual Relations (Counts VII and VIII)

 Defendants move to dismiss Counts VII and VIII on the basis that Section 301(a) of the Copyright Act preempts Plaintiff's claim for tortious interference with contractual relations.

Section 301(a)of the Copyright Act preempts state statutory and common law "rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106. . . ." 17 U.S.C. § 301(a) (1988). A copyright owner has the exclusive right to reproduce, distribute, perform, display and prepare derivative works from the copyrighted work. *Id.* § 106. "[S]tate law rights that 'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights' provided by federal copyright law" are

**2.** There is no dispute that Plaintiff has a regis- tered trademark in the name "Razor Ramon."

preempted by Section 301. *Computer Associates Intl. Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir.1992) (citation omitted). However, if the state cause of action requires an " 'extra element' . . . 'instead of or in addition to the acts of reproduction, performance, distribution or display,' " then the cause of action is not preempted. *Id.* (quoting 1 Nimmer, *supra*, § 1.01[B], at 1–14–15).

"In the Second Circuit, it is well settled that claims for tortious interference based on the unauthorized publication of a work protected by the Copyright Act are preempted." *American Movie Classics Co. v. Turner Entertainment Co.*, 922 F.Supp. 926, 932 (S.D.N.Y.1996).[3] That a tortious interference claim requires the plaintiff to plead the additional elements of awareness and intentional interference, which are not elements of a copyright claim, "goes merely to the scope of the right; it does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2d Cir.1983), *rev'd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985).

The gravamen of Plaintiff's tortious interference claim is an alleged violation of Plaintiff's exclusive rights under the Copyright Act. Plaintiff alleges that its contracts with Hall and Nash "were intended to reserve to Titan the exclusive ownership of, and right to portray, the character RAZOR RAMON in perpetuity" and "to reserve to Titan, in perpetuity, the exclusive ownership of, and right to portray, the character DIESEL." Am. Compl. ¶¶ 24, 38. Plaintiff claims that Defendants tortiously interfered with Plaintiff's contractual relationships by causing Hall and Nash to portray the copyrighted characters for Defendants. *Id.* ¶¶ 176–78, 185–87. The claim really alleges the unauthorized reproduction, distribution, performance or display

by Hall, Nash and Defendants, in violation of Plaintiff's exclusive rights to the copyright. Accordingly, Plaintiff's tortious interference claim is preempted by the Copyright Act. Defendants' motion to dismiss Counts VII and VIII is granted.

## D. CUTPA (Count XI)

Defendants move to dismiss Count XI on the basis that (1) Section 301 of the Copyright Act preempts Plaintiff's claim for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a *et seq.* (1990); and (2) CUTPA does not apply to Defendants' actions because they lack a sufficient nexus to the State of Connecticut.

### 1. Copyright Act Preemption

■ Plaintiff's CUTPA claim must be analyzed according to the Section 301 preemption principles discussed in Section C, *supra*. Pursuant to the "extra element" test, state unfair competition claims premised "solely in the copying of a plaintiff's protected expression" are preempted by Section 301. *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir.1993) (citation omitted), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). *Accord: Warner Bros.*, 720 F.2d at 247. To the extent a state unfair competition claim is based merely on a false designation of ownership that arose from the defendant's use of copyrighted material, it is preempted. *Kregos*, 3 F.3d at 666.

If the state cause of action requires the plaintiff to prove an extra element that " 'changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim' " it is not preempted. *Kregos*, 3 F.3d at 666 (quoting *Computer Assoc.*, 982 F.2d at 716) (internal quotations omitted and emphasis in original). *Accord: Patricia Kennedy & Co. v. Zam–Cul Enter-*

---

**3.** Plaintiff contends that *American Movie Classics*, was criticized by *Architectronics, Inc. v. Control Sys., Inc.*, 935 F.Supp. 425 (S.D.N.Y. 1996), and is inconsistent with Second Circuit authority. *Architectronics* declined to follow *American Movie Classics* only insofar as the district court held that the plaintiff's breach of contract claim was preempted. *Architectronics*, 935

F.Supp. at 439. *Architectronics* did not address the tortious interference claims. The district court distinguished such claims: "Tort-like copyright infringement claims, unlike breach of contract claims, do not require a promise by the defendant to refrain from using protected subject matter." *Id.* at 438.

*prises,* 830 F.Supp. 53, 56 (D.Mass.1993).[4] Accordingly, "unfair-competition claims based upon breaches of confidential relationships, breaches of fiduciary duties and trade secrets have been held to satisfy the extra-element test and avoid § 301 preclusion." *Kregos,* 3 F.3d at 666. Similarly, state claims based on deceptive trade practices involve the element of misrepresentation or deception, which is not part of a cause of action for copyright infringement, and are not preempted. 1 Nimmer, *supra,* § 1.01[B][1][e], at 1–24 (citation omitted). *See also Warner Bros.,* 720 F.2d at 247 (the Copyright Act does not preempt a "passing off" claim, which asserts misrepresentation).

CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b (a). To determine whether conduct is "unfair," a court must consider whether the practice (1) "offends public policy as it has been established by statutes, the common law, or otherwise;" (2) "is immoral, unethical, oppressive, or unscrupulous;" and (3) "causes substantial injury to consumers [ (competitors or other businessmen) ]." *Boulevard Associates v. Sovereign Hotels, Inc.,* 72 F.3d 1029, 1038 (2d Cir.1995) (citations and internal quotations omitted). Copyright infringement requires only that a plaintiff prove ownership of a valid copyright and infringement of that copyright. Additionally, state unfair trade practice statutes, such as CUTPA, generally seek to protect against unfair or deceptive trade practices, whereas federal copyright law seeks to protect a copyright owner's *property* interest. *See Anderson v. Nidorf,* 26 F.3d 100, 102 (9th Cir.1994) (citation omitted).

Plaintiff alleges that Defendants embarked on a scheme to compete unfairly with the WWF. Am. Compl ¶ 53. The crux of the alleged "scheme" was Defendants' deception of the public regarding a supposed "interpromotional warfare" in which the characters Razor Ramon and Diesel would appear on behalf on WWF. *Id.* ¶¶ 67, 90. Plaintiff claims that Defendants misrepresented to consumers that their new employees, Hall and Nash, were still affiliated with Plaintiff as Razor Ramon and Diesel. *Id.* ¶¶ 67–122.

Although Plaintiff does allege the unauthorized use of its "personas" as a violation of CUTPA, *Id.* ¶¶ 220, 222, Plaintiff's CUTPA claim is not based solely on the alleged unauthorized use of its intellectual property rights. Instead, Plaintiff is claiming an unfair and deceptive scheme by Defendants and that in carrying out this deceptive scheme, Defendants infringed Plaintiff's copyright and trademark rights. *Id.* ¶¶ 65–122. CUTPA protects against deceptive acts that fall outside the scope of copyright protection and satisfies the "extra element" test. The Copyright Act does not preempt Plaintiff's CUTPA claim.

### 2. Nexus to the State of Connecticut

■ CUTPA prohibits unfair methods of competition in the conduct of "trade or commerce." Conn. Gen.Stat. § 42–110b(a). Trade or commerce is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value *in this state.*" *Id.* § 42–110a(4) (emphasis added). A CUTPA violation, however, need not necessarily occur in Connecticut, but instead, the violation must "be tied to a form of trade or commerce *intimately associated* with Connecticut." *H & D Wireless Ltd. Partnership v. Sunspot,* Civil No. H–86–1026 (D.Conn. Feb.24, 1987) (emphasis added). *Accord: Richmond Fredericksburg & Potomac R.R. Corp. v. Aetna Cas. and Sur. Co.,* No. 3:96CV1054, 1997 WL 205783 at * 2 (D.Conn. April 11, 1997) (quotation and citation omitted). CUTPA is "remedial in character ... and must be liberally construed in favor of those whom the legislature intended to benefit." *Fink v. Golenbock,* 238 Conn. 183, 212–13, 680 A.2d 1243 (1996). CUTPA seeks to protect competitors and "other businessmen," as well as consumers. *A–G Foods, Inc. v. Pepperidge Farm, Inc.,* 216

---

4. Massachusetts authority construing its unfair trade practices act is "particularly persuasive because the governing statutes in Massachusetts are virtually identical [to CUTPA] ...." *Russell v. Dean Witter Reynolds, Inc.,* 200 Conn. 172, 183, 510 A.2d 972 (1986).

Conn. 200, 215, 579 A.2d 69 (1990) (citations omitted)

Defendants claim that their alleged unfair trade practices occurred at their principal place of business in Georgia, not in Connecticut, and, therefore, Plaintiff has failed to state a CUTPA claim. The Court disagrees. Plaintiff alleges that Defendants unfairly competed against the WWF by using their television programs, pay-per-view broadcasts and 900 hotline to disparage Plaintiff and to advertise a fictional "interpromotional warfare" between WWF wrestlers and WCW wrestlers. Defendants' allegedly deceptive television programs air in Connecticut, their pay-per-views are broadcast in Connecticut, Connecticut residents call the 900–number hot line and Plaintiff has its principal place of business in Connecticut.[5] Plaintiff sufficiently alleged a cause of action under CUTPA to survive a motion to dismiss.[6] Defendants' motion to dismiss Count XI is denied.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [doc. # 41] is **GRANTED IN PART AND DENIED IN PART.** Defendants' motion to dismiss Counts I, II, V, and XI is **DENIED.** Defendants' motion to dismiss Counts VII and VIII is **GRANTED.**

SO ORDERED.

### RULING ON MOTION FOR RECONSIDERATION

Plaintiff Titan Sports, Inc., etc. ("Plaintiff") moves for reconsideration of the July 10, 1997 Ruling granting a dismissal of Plaintiff's claims for tortious interference with contract. Counts VII (tortious interference with con-

tractual relations between Plaintiff and Scott Hall) and VIII (tortious interference with contractual relations between Plaintiff and Kevin Nash) of Plaintiff's complaint were dismissed as preempted by the Copyright Act. The motion for reconsideration [doc. # 136] is GRANTED. However, for the following reasons, the prior ruling is adhered to.

### I. DISCUSSION

#### A. Breach of Contract vs. Tortious Interference

Plaintiff merges breach of contract claims with tortious interference with contract claims and asserts that since "tortious interference with the contract claims rests in part on the same elements as the breach of contract claim plus additional elements," there is no basis upon which to hold that the former is preempted while the latter is not when the claims arise out of the same set of facts. Plaintiff's Memorandum of Law in Support of Motion for Reconsideration ("Memo.Supp."), p. 5. The July 10, 1997 Ruling did not address preemption of a breach of contract claim because Plaintiff did not assert a breach of contract claim in its complaint. Nevertheless, this argument is foreclosed by *Harper & Row Publishers, Inc. v. Nation Enterprises*, 723 F.2d 195, 201 (2d Cir.1983), *revd on other grounds*, 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), in which the Second Circuit held that a tortious interference claim was preempted by the Copyright Act. That a "promise" is an element of a tortious interference claim, like a breach of contract claim, did not shield the plaintiff's tortious interference cause of action from preemption.[1]

---

**5.** Additionally, there is authority that so long as the complaint alleges that the injury, *i.e.*, "economic impact" occurred in Connecticut, the plaintiff has stated a claim under CUTPA. *See Uniroyal Chemical Co., Inc. v. Drexel Chemical Co., Inc.*, 931 F.Supp. 132, 140 (D.Conn.1996) (citations omitted); *Alexander Hamilton Life Ins. Co. of Am. v. James River Corp. of Virginia*, No. 3:96CV1100, 1997 WL 13053 at * 6 n. 5 (D.Conn. Jan.14, 1997); *USGI, Inc. v. Michele Ltd. Partnership*, No. B–88–229, 1991 WL 152445 at * 3–4 (D.Conn. Jan.26, 1991).

**6.** Defendants contend that its transmission of communications is an insufficient nexus, citing

*Sherman Associates v. Kals*, 899 F.Supp. 868 (D.Conn.1995). *Sherman Associates*, addressed what constitutes *transacting business in the state*, not what is "trade or commerce" within the meaning of CUTPA.

**1.** Moreover, under the *Harper*, "qualitatively different" test, some breach of contract claims may be preempted by the Copyright Act. Although "pre-empton should be denied, to the extent that a breach of contract cause of action alleges more than reproduction, adaptation, etc. *simpliciter* of a copyrighted work," 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT, § 1.01[B][1][a] (1997) (emphasis in original), if a

## B. Copyrightability

Plaintiff also seems to argue that the copyrightability of the characters at issue is relevant to the preemption analysis. Memo. Supp., p. 3. The question is not whether the work is copyrightable, but instead, the question is whether the work is "within the ambit of copyright protection." *Harper*, 723 F.2d at 200:

> " 'As long as a work fits within one of the general subject matter categories of sections 102 and 103, the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain.' "

*National Basketball Ass'n. v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir.1997) (citing H.R. No. 94–1476 at 131 reprinted in 1976 U.S.C.C.A.N. 5659, at 5747 and *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 676 (7th Cir.1986), *cert. denied*, 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987)).[2]

## C. Equivalent to Exclusive Rights Protected by Copyright

Plaintiff does propound, on reconsideration, a strong argument that its tortious interference claim is not preempted because the act which constitutes the alleged copyright infringement is not the act that constitutes the tortious interference. Plaintiff contends that the distinction is whether "the unauthorized publication *alone* of a work protected by the Copyright Act was asserted to be the intentional interference." Memo. Supp., p. 8 (emphasis in original). The Second Circuit has not explicitly addressed this issue.

█ Although a tortious interference claim requires elements not present in a copyright action, an "extra element" does not protect a state claim from preemption unless that extra element establishes *"qualitatively differ-*

*ent* conduct on the part of the infringing party...." *Id.* at 201 (emphasis added). Only "to the extent that contract interference emerges from activity *other than unauthorized reproduction, distribution, performances, etc.*, then the elements are distinct and pre-emption should not lie." NIMMER § 1.01[B][1][a] n. 73.1 (emphasis added) (citing *General Mills, Inc. v. Filmtel Int'l Corp.*, 178 A.D.2d 296, 577 N.Y.S.2d 384 (N.Y.A.D. 1 Dept., 1991)).

In *Harper*, the Second Circuit held that the extra elements of awareness and intentional interference did not establish the requisite "qualitatively different conduct ..." to save the intentional interference claim from preemption. *Harper*, 723 F.2d at 201. In *Harper*, it was the act of publication of the work that the plaintiff alleged caused the interference. Here, Plaintiff contends that there was additional conduct—"the act of inducing, encouraging or forcing Hall and Nash to breach an express promise" which constitutes the interference. Memo. Supp., p. 10.[3] That distinction does not save Plaintiff's claim from preemption under the current law.

*General Mills*, 178 A.D.2d 296, 577 N.Y.S.2d 384, illustrates the distinction in the type of conduct that may protect a tortious interference claim from preemption. In that case, the plaintiff and the defendant entered into a contract conveying to the plaintiff rights in Defendant's copyright. Thereafter, the plaintiff began negotiating with a third party to exhibit the work. The defendant threatened both the plaintiff and the third party with legal action if they went through with the deal. The plaintiff sued the defendant for tortious interference with contract. The state court held that the claim was not preempted as it did not arise out of rights granted under the Copyright Act. The defendant's wrongful conduct that induced the breach in no way involved a violation of the Copyright Act. No unauthorized reproduc-

---

breach of contract claim rests solely on the defendant's reproduction etc. of the work, such claim seemingly would be preempted.

**2.** In its reply brief Plaintiff apparently asserts that it is not challenging the subject matter prong of the preemption analysis. In its motion for

reconsideration, however, Plaintiff made this argument in defense of its claim.

**3.** These allegations do not appear in the complaint.

tion, publication, etc., was alleged—it was purely a matter of contract law, which only tangentially involved copyrights.

Here, Plaintiff's tortious interference claim emerges from the unauthorized reproduction, distribution, performance, etc., of Plaintiff's copyrighted work. Plaintiff alleges that its contracts with Hall and Nash "were intended to reserve to Titan the exclusive ownership of, and right to portray, the character RAZOR RAMON in perpetuity" and "to reserve to Titan, in perpetuity, the exclusive ownership of, and right to portray, the character Diesel." Amended Complaint ¶¶ 24, 38. The right that Plaintiff's contracts with Hall and Nash seeks to protect is Plaintiff's exclusive ownership right in its copyrighted material—precisely what the Copyright Act seeks to protect. Plaintiff claims that Defendants tortiously interfered with Plaintiff's contractual relationships by causing Hall and Nash to portray the copyrighted characters for Defendants; Plaintiff is suing Defendants for copyright infringement for those acts. Plaintiff alleges the breach of the contracts occurred when Defendants infringed Plaintiff's copyrights in the characters Razor Ramon and Diesel. The inducement allegedly giving rise to the tortious interference claim is the inducement by Defendants to Hall and Nash to portray Razor Ramon and Diesel, the same inducement alleged to constitute the copyright violation.

However Plaintiff attempts to frame its tortious interference claim, Plaintiff's claim alleges a violation of Plaintiff's rights that are the equivalent to the exclusive rights within the general scope of copyright. The "additional conduct" alleged by Plaintiff is not sufficient to remove its claim from the preemption arena.[4]

## II. CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration [doc. # 136] is

GRANTED. However, the prior ruling is adhered to.

SO ORDERED.

---

4. Plaintiff argues at length in its motion for reconsideration that footnote 3 of the July 10, 1997 Ruling mischaracterized dicta in *Architectronics, Inc. v. Control Sys. Inc.,* 935 F.Supp. 425 (S.D.N.Y.1996). Plaintiff is correct that the quoted language from *Architectronics,* related to

copyright claims, not tortious interference claims. That conclusion, however, has no impact on the resolution of Plaintiff's tortious interference claim. Under Second Circuit authority Plaintiff's claim is preempted.