**INDYMAC MORTGAGE HOLDINGS, INC. and Indymac, Inc.**
**Plaintiffs,**

v.

**Mostafa REYAD and Wafa Reyad, Defendants.**

No. 3:00CV835(CFD).

United States District Court, D. Connecticut.

Aug. 10, 2001.

David R. Schaefer, Brian P. Daniels, Rowena Amanda Moffett, Brenner, Saltzman & Wallman, New Haven, CT, for Plaintiffs.

Mostafa and Wafa Reyad, Fort Lee, NJ, pro se

### RULINGS ON VARIOUS PENDING MOTIONS

DRONEY, District Judge.

This diversity of citizenship action arises out of the plaintiffs' claims that the defendants breached a number of agreements relating to residential mortgage financing. Counts One and Two allege breach of contract against Mostafa Reyad; Count Three alleges breach of guaranty against Mostafa Reyad and Wafa Reyad; and Count Four alleges violations of the Connecticut Unfair Trade Practices Act, Conn. Gen.Stat. § 42–110b, against Mostafa Reyad. Pending are various motions filed by both defendants.

*Background and Jurisdictional Facts*

Plaintiffs Indymac Mortgage Holdings, Inc., doing business as Warehouse Lending Corporation of America ("WLCA"),

and Indymac, Inc. ("IMI"), are corporations organized under the laws of Delaware with their principal place of business in California. IMI is a wholly-owned subsidiary of WLCA. Defendants Mostafa and Wafa Reyad, who are husband and wife, are residents of Fort Lee, New Jersey. Mr. Reyad owns and operates a mortgage lending business in Stamford, Connecticut.[1] This business is known under several names, including Federal Mortgage Company of Connecticut, National Funding, and NFC of New York. For the purposes of this ruling, the Court will refer to this business as the Federal Mortgage Company of Connecticut ("FMCC").[2]

WLCA provides financing to small and mid-sized mortgage loan originators by supplying them with lines of credit known as "warehouse lines." These loan originators use this warehouse financing to fund residential mortgage loans. FMCC is such a mortgage loan originator, and borrowed a warehouse line from WLCA pursuant to the Lending Agreement described below. After FMCC originates a mortgage loan, it repays WLCA's warehouse line financing by selling the mortgage loan to investors on the secondary market. IMI is one of these investors. The obligations of IMI and FMCC with respect to this arrangement are set forth in the Seller Contract executed by the parties, also described below Although IMI is a wholly-owned subsidiary of WLCA, FMCC apparently has no obligation to sell its mortgages to IMI; it may sell the mortgage loans to other investors.

FMCC first borrowed a warehouse line from WLCA on or about December 6, 1996. On that date, the parties executed a "Master Revolving Loan and Security Lending Agreement" (the "Lending Agreement") and a Promissory Note (the "note").[3] Under the terms of the Lending Agreement and note, WLCA was to provide FMCC with a warehouse line to be used to originate mortgage loans, and FMCC agreed to pay WLCA the principal and interest borrowed against the warehouse line within certain time requirements. WLCA also retained a first lien security interest in any mortgage loans made by FMCC using financing from the warehouse line. The parties also executed a letter specifying borrowing and lending criteria to be used by WLCA and FMCC, terms which were revised periodically by the parties. The most recent of these revisions, dated November 10, 1998, lists the FMCC aggregate credit limit under the warehouse line as $12 million.[4] At the

---

1. According to the plaintiffs, this business is not incorporated in any state.

2. According to Wafa Reyad's memoranda, she has no active role in the daily operations of her husband's business. However, documents submitted by the plaintiffs indicate that she held a valid Connecticut mortgage lender license from December 27, 1999, until September 30, 2000, and according to the deposition of Mostafa Reyad, Mrs. Reyad loaned her husband approximately $1 million for use in his business. The following are attached to the plaintiffs' Post–Hearing Memorandum as Exhibit A: (1) Mrs. Reyad's license application; (2) her mortgage license bond; (3) a certification from the director of the Consumer Credit Division of the State of Connecticut

Department of Banking stating the effective dates of her license; and (4) a letter purportedly from Wafa Reyad requesting that the address listed on her license application should be changed to an address in Stamford, Connecticut. The deposition of Mostafa Reyad is attached to the Memorandum of Law in Opposition to Defendant Wafa Reyad's "Request to Dismiss" as Exhibit A.

3. The Lending Agreement is attached to the declaration of Brian E. Ainslie as Exhibit A. The Court was not provided with a copy of the note.

4. The 1998 letter is attached to the Ainslie declaration as Exhibit C.

time the parties entered into the Lending Agreement and note, both Mr. and Mrs. Reyad also executed documents entitled "Credit Guaranty (Individual)" in which they personally guaranteed FMCC's obligations to WLCA.[5] Paragraph 15 of both guarantees states, "This Guaranty shall be deemed to be made under and shall be governed by the laws of the State of California, without reference to conflicts of laws principles."

Mr. Reyad, through FMCC, originated 33 mortgage loans, borrowing $5.7 million under the warehouse line from WCLA, an amount which was outstanding at the time the plaintiffs filed their complaint. IMI had initially offered to purchase 30 of these loans, pursuant to the terms contained in the Seller Contract and IMI's "Seller's Guide." The Seller Contract contains a choice of law provision and a forum selection clause, which states:

> This Contract shall be governed, and construed and enforced in accordance with, applicable federal laws and the laws of the State of California, without reference to conflict of laws principles, and the Seller [FMCC] hereby agrees that any court action arising out of this Contract shall be brought in any court of competent jurisdiction within the State of California, County of Los Angeles.[6]

After reviewing 21 of the loans more carefully, IMI claims that it discovered that the loan files contain documents with substantial misrepresentations. Specifically, the plaintiffs allege that the documents contain forged signatures, falsified credit histories, false information regarding bank deposits and employment, and false representations of income. According to the declaration of Brian E. Ainslie, a corporate credit manager at WLCA, the value of the mortgages is overvalued by an average of 22.27 percent, a result of the misinformation contained in the fraudulent documents submitted by FMCC.[7]

Pending are the following motions: Wafa Reyad's "Motion to Remove Defendant Wafa Reyad Due to Improper Venue" [Doc. # 22]; Wafa Reyad's "Request to Dismiss" [Doc. # 32]; "Defendant, Mostafa Reyad's Motion for Judgment of Dismissal: Or in the Alternative for Dismissal of the Original Complaint for Lack of Subject Matter Jurisdiction and for Other Relief Pursuant to Federal Rule of Civil Procedure 12" [Doc. # 82]; "Defendant, Wafa Reyad's Motion for Judgment of Dismissal: Or in the Alternative for Dismissal of the Original Complaint for Lack of Subject

---

5. The guarantees are attached to the Ainslie declaration as Exhibits C and D, and Mrs. Reyad's guaranty also is attached to the plaintiff's Memorandum of Law in Opposition to Defendant Wafa Reyad's "Request to Dismiss" as Exhibit D.

6. While this contract was not attached to the materials submitted with the complaint, it was provided by defendant Mostafa Reyad in connection with his motion to dismiss.

7. Based on these allegations and other supporting evidence, this Court issued a temporary restraining order preventing the defendants from disposing of their assets out of the ordinary course of business, and U.S. Magistrate Judge William I. Garfinkel issued a pre-judgment remedy in the amount of $1.7 million. The plaintiffs also allege that on May 11, 2000, after this Court issued its temporary restraining order, Wafa Reyad executed a quitclaim deed conveying a condominium that she owned in Greenwich, Connecticut, to her son, David Sherif Reyad. A copy of this deed is attached to the plaintiff's Memorandum of Law in Opposition to Defendant Wafa Reyad's "Request to Dismiss" as Exhibit A. More recently, however, in "Defendant, Mostafa Reyad's Motion, Pursuant to Federal Rule of Civil Procedure 64 and Conn. Gen. Stat. Sec. 52–278K, to Dissolve the Prejudgment Remedies Issued Against Defendants on or about May 16, 2000" and its supporting memorandum, Mr. Reyad disputes Ainslie's claim of overvaluation.

Matter Jurisdiction and for Other Relief Pursuant to Federal Rule of Civil Procedure 12" [Doc. # 83]; and "Defendant Mostafa Reyad's Rule 12(B)(1) Motion to Dismiss" [Doc. # 101]. Both Mostafa and Wafa Reyad are proceeding *pro se.*

In her pending motions, Wafa Reyad argues that she should be dismissed from this action for three reasons. First, she contends that under Fed.R.Civ.P. 12(b)(2) this Court lacks personal jurisdiction over her because she has not transacted any business in Connecticut. Second, she maintains that venue is improper in this district, and appears to argue that this action should be transferred to New Jersey. She further argues that this Court lacks subject matter jurisdiction because the plaintiffs have not adequately demonstrated that the diversity of citizenship requirement is satisfied based on the indefinite jurisdictional language in the complaint.[8] Finally, Mostafa Reyad argues that this action should be dismissed due to the existence of the California forum selection clause in the Seller Contract.

In response, the plaintiffs argue that Mrs. Reyad has waived any defense of lack of personal jurisdiction, but maintain that even if the Court were to reach the merits of her motions, the supporting affidavits and evidence indicate that Mrs. Reyad transacted business in Connecticut and that there are minimum contacts with this state sufficient to subject her to jurisdiction and to comply with due process requirements. In particular, they point to the fact that Mrs. Reyad executed a guaranty for her husband's Connecticut business, loaned him money, obtained a Connecticut mortgage broker's license, and

owned property in this state. The plaintiffs also contend that venue in this state is proper, and that this court does not lack subject matter jurisdiction, as they have properly pled diversity of citizenship in their complaint. Finally, in response to Mostafa Reyad's motion to dismiss, they argue that the forum selection clause contained in the Seller Contract should not be enforced.

In light of the defendants' *pro se* status, the Court has given them significant latitude when considering and deciding the motions that they have filed. *See, e.g., Kadosh v. TRW, Inc.,* No. 91 Civ. 5080(PKL), 1994 WL 681763, *5 (S.D.N.Y. Dec.5, 1994) ("The work product of pro se litigants should be generously and liberally construed"). While the arguments contained in some of the motions are difficult to understand, the Court has interpreted them as best as it could.

For the following reasons, documents 22, 32, 82, and 83 are DENIED, and document 101 is GRANTED IN PART.

*Discussion*

A. Wafa Reyad's "Request to Dismiss" [Doc. # 32]

1. Burden of Proof and Waiver

When the defendant moves to dismiss a case for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), the plaintiff has the burden of showing that the court has jurisdiction. *See Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.), *cert. denied,* 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."[9] *Id.*

---

**8.** Mostafa Reyad moves to dismiss on the basis of subject matter jurisdiction for the same reason.

**9.** Here, discovery was not complete at the time of the filing of the motion to dismiss based on lack of personal jurisdiction.

(citing *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990)). That is, the plaintiff must make a *prima facie* showing through affidavits and other evidence that the defendant's conduct was sufficient for the court to exercise personal jurisdiction. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981) ("If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials."); *Hardy v. Ford Motor Car*, 20 F.Supp.2d 339, 341 (D.Conn.1998). In ruling, the court must resolve all doubts in favor of the plaintiff, regardless of controverting evidence submitted by the defendant. *See United States Surgical Corp. v. Imagyn Med. Tech., Inc.*, 25 F.Supp.2d 40, 44 (D.Conn.1998).

■ However, "[t]he requirement that a court have personal jurisdiction is a due process right that may be waived either explicitly or implicitly." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 729 (2d Cir.1998). "The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id.; see also Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1303 (2d Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 116 (1990) (holding that the defendant consented to jurisdiction where it delayed making the appropriate motion, attended pretrial conferences and made no mention of the defense of lack of personal jurisdiction for nearly four months). "If a party enters a case, makes no objection to jurisdiction, and asks the court to act on its behalf in some substantive way, it will be held to have waived further objection." *Grammenos v. C.M. Lemos*, 457 F.2d 1067, 1070 (2d Cir.1972). Further, a defendant must consolidate any available Rule 12(b) defenses in one pre-answer motion. *See* Fed. R.Civ.P. 12(g). "If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense so omitted . . . ." *Id.*

2. Two–Part Jurisdictional Inquiry

■ "It is well established that jurisdiction is to be determined by examining the conduct of the defendants as of the time of service of the complaint." *Greene v. Sha–Na–Na*, 637 F.Supp. 591, 595 (D.Conn.1986).

[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry. First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the court's assertion of jurisdiction under these laws comports with the requirements of due process.

*Metropolitan Life*, 84 F.3d at 567 (citing *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir.1990)).

■ To satisfy the first inquiry, courts look to the forum state's long-arm statute. *See Savin*, 898 F.2d at 306. Connecticut's relevant long-arm statute, Conn. Gen.Stat. § 52–59b(a), provides that a court may exercise jurisdiction over a nonresident defendant who "(1) transacts any business within the state . . . or (4) owns . . . any real property situated within the state." When determining whether the defendant transacted any business within Connecticut, courts do not apply a rigid formula, but instead balance several considerations, including public policy, common sense, and the chronology and geog-

raphy of relevant factors. *See Sherman Associates v. Kals*, 899 F.Supp. 868, 870 (D.Conn.1995); *Zartolas v. Nisenfeld*, 184 Conn. 471, 440 A.2d 179, 182 (1981); *Zemina v. Petrol Plus Inc.*, No. CVNH 97128590, 1998 WL 279819, *2 (Conn.Super.Ct. March 3, 1998). A defendant transacts business within the state even when he or she engages in a single purposeful business transaction in Connecticut. *See Zartolas*, 440 A.2d at 181; *Zemina*, 1998 WL 279819 at *2. The execution of a guaranty may serve as one basis for a court's finding that a defendant transacted business in Connecticut. *See Zemina*, 1998 WL 279819 at *2; *American Nat'l Bank v. Centrig Indus., Inc.*, No. CV92 0337462 S, 1993 WL 524785, *3 (Conn.Super.Ct. Dec.10, 1993). *But see N.E. Contract Packers v. Beverage Servs.*, No. 100039, 1992 WL 157435, *3 (Conn.Super.Ct. June 17, 1992) (holding that the execution of a personal guaranty alone did not constitute a single business transaction under Connecticut's long-arm statute).

 With respect to the second inquiry,

> The court must next determine whether the statutory reach of the long arm statute violates constitutional due process. Under the due process standard, a nonresident must have 'minimum contacts' with the forum state. To have these minimum contacts, a defendant must purposefully avail himself of the privileges and benefits of the forum state.... [T]he defendant's conduct and connection with the forum state should be such that he should reasonably anticipate being haled into court there.

*Imagyn Med. Tech., Inc.*, 25 F.Supp.2d at 44–45 (internal quotation marks and citations omitted). Due process further requires that the defendant be given "fair warning" that its activities in a state may subject it to suit there. *See Metropolitan Life Ins.*, 84 F.3d at 567.

 In addition to minimum contacts, "the court must consider these contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Ensign–Bickford Co. v. ICI Explosives USA, Inc.*, 817 F.Supp. 1018, 1030 (D.Conn.1993) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Metropolitan Life Ins. Co.*, 84 F.3d at 568. As part of its "reasonableness" analysis, the Court must consider:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of justice of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metropolitan Life Ins. Co.*, 84 F.3d at 568.

### 3. Personal Jurisdiction over Wafa Reyad

#### a. Procedural Waiver

 Mrs. Reyad has waived her ability to raise a defense of lack of personal jurisdiction because she failed to raise the defense in other Rule 12(b) motions filed before her motion to dismiss based on lack of personal jurisdiction [entitled "Request to Dismiss," Doc. # 32] which was filed on July 10, 2000. First, she wrote a letter to U.S. Magistrate Judge Garfinkel, filed on June 6, 2000, in which she requests dismissal of this action, claiming that she was not involved in FMCC. This letter is the equivalent of a Rule 12(b)(6) motion for failure to state a claim upon which relief

can be granted, and as such, Mrs. Reyad was required under Rule 12(g) to include any other defenses under Rule 12(b) in this motion. By failing to do so, she waived any further defense to lack of personal jurisdiction. Second, even if Mrs. Reyad did not intend this June 6 letter to be construed as a motion to dismiss under Rule 12(b)(6), she waived any personal jurisdiction defense by filing her motion to dismiss based on improper venue [Doc. # 22], another defense available under Rule 12(b). This motion also was filed on June 6, 2000, well over a month before she filed her motion to dismiss for lack of personal jurisdiction. Thus, under Rules 12(g) and (h)(1), Mrs. Reyad also waived this challenge to personal jurisdiction by omitting it from her venue motion.

Further, Mrs. Reyad's conduct amounts to a legal submission to the jurisdiction of this Court. *See Transaero,* 162 F.3d at 729. Prior to filing her motion to dismiss for lack of personal jurisdiction, Mrs. Reyad filed the two June 6 documents previously discussed, a motion for separation, and a permissive counterclaim.[10] She also attended a prejudgment remedy hearing before Judge Garfinkel. These actions also indicate that Mrs. Reyad waived any jurisdictional defenses, as she sought affirmative relief by filing a permissive counterclaim. *See Grammenos,* 457 F.2d at 1070. In doing so, she consented to jurisdiction before filing the instant motion to dismiss. However, in recognition of Mrs. Reyad's *pro se* status, the Court also will consider the merits of the motion as an alternative basis for dismissal.

### b. Long–Arm Statute

■ The plaintiffs have shown that Wafa Reyad has transacted business in Connecticut within the meaning of Connecticut's long-arm statute, Conn. Gen. Stat. § 52–59b(a)(1). While Mrs. Reyad claims that she has never been actively involved in any Connecticut business activities, the evidence provided by the plaintiffs indicates that she has provided financial support for FMCC, a Connecticut mortgage lender. *See Sherman Associates,* 899 F.Supp. at 871 (holding that the defendant transacted business in this state where "[t]he property which was the focus of [his] business endeavors was located in Connecticut"); *Zemina,* 1998 WL 279819 at *3–4 (concluding that the defendants transacted business in Connecticut when they signed a guaranty and lease pertaining to a Connecticut property). Not only did Mrs. Reyad loan her husband $1 million, she also signed one of the guarantees that enabled FMCC to obtain the warehouse line from WLCA. According to the affidavit of Walter Tharp,[11] an employee of Indymac Bank, F.S.B., the successor to WLCA and IMI, Mrs. Reyad's guaranty was essential to WLCA's decision to provide a warehouse line of credit to FMCC. Because she owned a significant number of assets, Mrs. Reyad was required by WLCA to guaranty her husband's obligations and submit periodic

---

**10.** Mrs. Reyad filed a motion to withdraw her counterclaim without prejudice on August 11, 2000.

**11.** The Court notes that Mr. Tharp's "affidavit" lacks notarization, and thus is not actually an affidavit. *See Di Maggio v. Cooperativa Agricola S. Giuseppe,* No. CIV. A. 96–4682, 1997 WL 360945, *3 (E.D.Pa.1997) (stating that a statement that is neither sworn or notarized is not "tantamount to an affidavit").

Still, the Court will consider it as an unsworn declaration, as Mr. Tharpe states that he made the statements contained therein "under the pains and penalties of perjury." *See Search Force, Inc. v. Dataforce Int'l, Inc.,* 112 F.Supp.2d 771, 774 n. 7 (noting that "an unsworn declaration may substitute for an affidavit if it subjects the declarant to penalties of perjury").

financial statements throughout the course of its business dealings with FMCC.[12] In fact, the guaranty itself stated that Mrs. Reyad's willingness to guaranty her husband's obligations was necessary for WLCA to provide Mr. Reyad with the warehouse line. It stated, "[a]s a condition precedent to Lender's obligation to extend ... credit, Guarantor is required to execute and deliver this Guaranty to Lender." In this way, her guaranty acted as an inducement for WLCA to do business in Connecticut. *See Choice Hotels Int'l, Inc. v. Madison Three, Inc.,* 23 F.Supp.2d 617, 621–22 (D.Md.1998) (holding that a shareholder's execution of a guaranty outside of the state of Maryland constituted a business transaction within the meaning of Maryland's long-arm statute, which has been interpreted as extending to constitutional limits). Finally, although Mrs. Reyad states that she never was actively involved in any Connecticut business activities, she obtained a mortgage lender license which on its face indicated that she was doing business as The Financial Empire, an entity whose address is listed as Stamford, Connecticut.[13] Alone, the fact that she was licensed to do business in Connecticut at the time of service of the complaint may not indicate that she actually transacted business here. *See Beja v. Jahangiri,* 453 F.2d 959, 962 (2d Cir.1972) (holding that the mere authorization to do business is not dispositive on the issue of personal jurisdiction under New York's long-arm statute for foreign corporations). However, her license, together with her involvement in financially supporting her husband's Connecticut business and guaranteeing its obligations, indicate that Mrs. Reyad transacted business in this state.

Mrs. Reyad also argues that signing the guaranty was not a Connecticut business transaction because she did so in New Jersey and because the guaranty contains terms indicating that it is to be construed under California law.[14] *See N.E. Contract Packers,* 1992 WL 157435 at *3. However, in *N.E. Contract Packers* the guaranty signed by the defendants was their only contact with Connecticut. *See* 1992 WL 157435 at *1. Here, the plaintiffs have shown that Mrs. Reyad transacted business here by loaning money to her husband for use *in his Connecticut business* and by obtaining a mortgage lender license, as well as by guaranteeing his financial obligations to FMCC.[15] The fact that the guaranty was not executed in Connecticut does not undermine this Court's jurisdiction because the contractual obligations of the guaranty and Lending Agreement were to be performed in Connecticut. *See Zemina,* 1998 WL 279819 at *4; *American Nat'l Bank,* 1993 WL 524785 at *3. Further, while a choice of law provision is one factor to be considered in determining whether personal jurisdiction over a defendant exists, "such a provision standing alone would be insufficient to confer jurisdiction." *Burger King v. Rudzewicz,* 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *see also CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 366–67 (2d Cir. 1986). Here, the guaranty's choice of law

---

**12.** The last statement was dated February 4, 2000.

**13.** Mrs. Reyad claims that she obtained her mortgage lender license only so she would be able to assume her husband's business were he to pass away.

**14.** She further suggests that the plaintiffs committed fraud when they asked her to sign the guaranty.

**15.** Even if they had not, a the execution of a personal guaranty has been found to constitute the transaction of business in Connecticut. *See Zemina,* 1998 WL 279819 at *2–*4.

provision points towards California, a state other than Connecticut.

Thus, based on considerations of "public policy, common sense, and the chronology and geography of relevant factors," the Court concludes that Mrs. Reyad transacted business in Connecticut.[16] *Sherman Associates*, 899 F.Supp. at 870; *Zartolas*, 440 A.2d at 182; *Zemina*, 1998 WL 279819, at *2.

#### c. Constitutional Due Process

■ Second, this Court's exercise of personal jurisdiction over Mrs. Reyad also satisfies the second prong of the jurisdictional inquiry because it comports with the requirements of due process. Mrs. Reyad has purposefully availed herself of the privileges and benefits of this state. *Imagyn Med. Tech., Inc.*, 25 F.Supp.2d at 44–45. She applied for and received a mortgage broker's license from this state, provided financial support for her husband's Connecticut business, and executed a guaranty which rendered her personally liable for all payments owed by FMCC to WLCA. In doing so, Mrs. Reyad induced WLCA to do business with her husband's firm in this state and stood to benefit from the Lending Agreement between WLCA and FMCC. *See National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137 (6th Cir.1982) (holding that two spouses who guaranteed their husbands' business obligations had an economic interest in the corporation at issue, a fact which furnished the necessary minimum contacts). Thus,

based on her involvement with FMCC, a Connecticut business, Mrs. Reyad has sufficient minimum contacts with this state and reasonably could have anticipated being haled into court in Connecticut.

In addition, "the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Ensign–Bickford*, 817 F.Supp. at 1030; *Metropolitan Life Ins. Co.*, 84 F.3d at 568. This Court's exercise of jurisdiction over Wafa Reyad would not impose a significant burden on her, as her home in Fort Lee, New Jersey is only 19 miles from the Connecticut border. Connecticut has a significant interest in litigating the case, as the business partially financed by Mrs. Reyad is located here, as are many of the properties for which FMCC provided mortgage loans. Similarly, the plaintiffs have an interest in obtaining relief here, as the allegedly fraudulent activities of Mr. Reyad and his employees occurred in this state. In addition, the guaranty served as an inducement for WLCA to do business in Connecticut with FMCC. As the court stated in *Choice Hotels*, "by virtue of the inextricable nature of the two separate agreements, and the fact that one (the guaranty) induced the other ..., it is fair in the constitutional sense to charge the individual defendants ... to litigate the question of their liability in [this] court." *See* 23 F.Supp.2d at 621–22.

For the foregoing reasons, the Court concludes that the plaintiffs have satisfied their burden of showing that this Court

---

**16.** The plaintiffs also argue that this Court has jurisdiction over Mrs. Reyad pursuant to Conn. Gen.Stat. § 52–59b(a)(4), which provides that a court may exercise jurisdiction over a nonresident defendant who owns any real property situated within the state. Mrs. Reyad contends that the Court cannot exercise jurisdiction based on this provision because on May 15, 2000, the day that she was served with the complaint, she did not own

any property in Connecticut. In fact, she had conveyed the Greenwich condominium to her son four days earlier. "It is well established that jurisdiction is to be determined by examining the conduct of the defendants as of the time of service of the complaint." *Greene*, 637 F.Supp. at 595. Thus, this Court will not base its jurisdiction on section on 52–59b(a)(4).

has jurisdiction over Wafa Reyad pursuant to the Connecticut long-arm statute and the constitutional requirements of due process. *Metropolitan Life*, 84 F.3d at 567.

B. "Motion to Remove Defendant Wafa Reyad Due to Improper Venue" [Doc. # 22]

It is not clear whether Wafa Reyad moves to dismiss this case based on improper venue as well as seeking to transfer the action against her to the District of New Jersey. Accordingly, the court will address both scenarios. Further, because she makes some of the following arguments in her "Request to Dismiss" [Doc. # 32], the Court will reference those points as well.

1. Dismissal

 Although she does not invoke the federal rule, the Court assumes that Mrs. Reyad has moved to dismiss the counts against her under Fed.R.Civ.P. 12(b)(3) for improper venue. On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff. *See United States Envtl. Prot. Agency v. Port Auth. of New York & New Jersey*, 162 F.Supp.2d 173, 183 (S.D.N.Y. 2001). The court must take all allegations in the complaint as true, unless contradicted by the defendants' affidavits, and "[w]hen an allegation is so challenged '[a] court may examine facts outside the complaint to determine whether venue is proper. The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *See id.* (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1352 (1990 & Supp.1999)). If the venue is improper, the Court may dismiss or transfer the case to any district in which it could have been brought. *See* 28 U.S.C. § 1406(a); *see also Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir.1993) (stating that "[w]hether dismissal or transfer is appropriate lies within the sound discretion of the district court").

 Since the plaintiffs allege diversity jurisdiction, the applicable venue statute is 28 U.S.C. § 1391(a), which provides, in relevant part:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in ... (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property is situated ....

28 U.S.C. § 1391(a). The plaintiff bears the burden of proving that venue is proper. *See Schomann Int'l Corp. v. Northern Wireless, Ltd.*, 35 F.Supp.2d 205, 212 (N.D.N.Y.1999). Under section 1391(a)(2), venue may properly exist in more than one district, and thus the plaintiff is not required to establish that his chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *Kirkpatrick v. The Rays Group*, 71 F.Supp.2d 204, 212 (W.D.N.Y.1999) (citations omitted); *Neufeld v. Neufeld*, 910 F.Supp. 977, 986 (S.D.N.Y.1996). When the complaint is based on a contract dispute, courts consider several factors in determining whether venue is proper under section 1391(a)(2), including (1) where the contract was negotiated or executed; (2) where it was to be performed; (3) where the alleged breach occurred; and (4) where the alleged harm occurred. *See Kirkpatrick*, 71 F.Supp.2d at 212.

 Mrs. Reyad argues that venue is improper in Connecticut because she is a resident of New Jersey and WLCA is lo-

cated in California; she also denies being an owner, officer, or guarantor of FMCC at the time the complaint was filed.[17] However, the relevant factors indicate that venue in Connecticut is proper. First, the guaranty was to be performed at least partially in Connecticut, as Mrs. Reyad guaranteed repayment of all of the funds that WLCA loaned to FMCC, a business located in Stamford, Connecticut. Second, the underlying alleged breach that triggered Mrs. Reyad's obligations under the guaranty-that FMCC could not fulfill its obligations under the Lending Agreement-occurred in Connecticut. Third, since FMCC originated many of its mortgage loans in Connecticut, much of the alleged harm occurred here as well. Although venue may also lie in New Jersey and perhaps even California, venue may exist in more than one district. *See Kirkpatrick,* 71 F.Supp.2d at 212; *Neufeld,* 910 F.Supp. at 986. The plaintiffs have shown that a substantial part of the of the events occurred here, and thus is sufficient for the purposes of section 1391(a)(2). *See id.* Thus, venue is proper in this district, and to the extent that Mrs. Reyad requests that this Court dismiss the count against her based on improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406, it is denied.[18]

### 2. Transfer

█ Mrs. Reyad apparently seeks transfer to the District of New Jersey under 28 U.S.C. § 1404(a). While she does not explicitly address it in her motion and memoranda, the Court also has con-

---

**17.** Mrs. Reyad failed to submit a supporting memorandum of law, as required by D. Conn. Loc. R. Civ. P. 9(a) ("Any motion involving disputed issues of law shall be accompanied by a written memorandum of law.... Failure to submit a memorandum may be deemed sufficient cause to deny the motion."). However, a little over a month after her motion to dismiss based on improper venue was filed, Mrs. Reyad submitted a "Defendant Memorandum of Law to Support Motion Request to Dismiss and Answering Plaintiff's Memorandum Opposing Removing Wafa Reyad Due to Improper Venue." Given that Mrs. Reyad is proceeding *pro se,* this Court will construe this as a supporting memorandum and will not dismiss the motion under Local Rule 9(a).

**18.** Mrs. Reyad also argues that this case should be dismissed because a similar case is currently pending in the District of New Jersey and the pendency of two such suits would violate the Seventh Amendment to the U.S. Constitution. She further suggests that the Court should abstain from hearing this case based upon the Second Circuit's unpublished opinion in *General Star Indem. Co. v. Anheuser–Busch Cos., Inc.,* 199 F.3d 1322 (2d Cir. 1999), in which the court affirmed the district court's decision to abstain from hearing certain claims pursuant to *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Under *Brillhart,* a district court may abstain from hearing a declaratory judgment action raising state law issues which are pending before a state court in another action where "it would be uneconomical as well as vexatious for a federal court to proceed." *See* 316 U.S. at 495, 62 S.Ct. 1173. Here, the doctrine is not applicable because the instant case is not a declaratory judgment action and because the New Jersey case apparently is pending in federal, not state, court. However, the Court also recognizes its ability to stay or dismiss a suit that is duplicative of another federal court suit, as part of its general power to administer its docket. *See Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000) (citing *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ("As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation.")); *Cedars–Sinai Medical Ctr. v. Shalala,* 125 F.3d 765, 768 (9th Cir.1997) ("[W]hen cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy"). The New Jersey action, however, has apparently been stayed. Thus, the Court will not dismiss this case on this basis.

sidered whether it is appropriate to sever count three as it pertains to her.[19]

■■■■■ Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *See also Clisham Mgmt., Inc. v. American Steel Bldg. Co.*, 792 F.Supp. 150, 157 (D.Conn.1992); *Wilshire Credit Corp. v. Barrett Capital Management Corp.*, 976 F.Supp. 174, 180 (W.D.N.Y.1997); *Wine Mkts. Int'l, Inc. v. Bass*, 939 F.Supp. 178, 179–80 (E.D.N.Y. 1996). The goal of section 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and to protect the public against unnecessary inconvenience and expense. *See Schomann Int'l Corp.*, 35 F.Supp.2d at 213; *Wilshire Credit Corp.*, 976 F.Supp. at 180; *Wine Mkts. Int'l*, 939 F.Supp. at 178. "The burden is on the moving party to clearly establish that a transfer is appropriate, by providing an affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Schomann Int'l Corp.*, 35 F.Supp.2d at 213 (quotations omitted).[20]

■■■■■ "The inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred is one that might have been brought in the transferee court. Second, the court must determine whether, considering the convenience of parties and wit-

nesses and the interest of justice, a transfer is appropriate." *Wilshire Credit Corp.*, 976 F.Supp. at 180 (quotations omitted); *see also Schomann Int'l Corp.*, 35 F.Supp.2d at 213 (characterizing the standard as a three-part test). Further, "[i]n the situation where venue is proper for one defendant but not for another and dismissal is inappropriate, the district court has a choice.... [One] alternative is to sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district." *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994); *United Nations Korean Reconstruction Agency v. Glass Prod. Methods, Inc.*, 143 F.Supp. 248, 250 (S.D.N.Y.1956). In particular, "[w]hen the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion." *Cottman*, 36 F.3d at 296.

■■■■ As to the first inquiry, it appears that this action may have been brought in New Jersey, given that Wafa Reyad resides there, and a similar action apparently was filed in that district. *See* 28 U.S.C. § 1391(a)(1) (stating that venue lies in "a judicial district where any defendant resides"). As to the second inquiry, courts are guided by the following factors: (1) convenience of the parties; (2) convenience of the witnesses; (3) relative means of the parties; (4) locus of operative facts and relative ease to sources of proof; (5) avail-

---

**19.** Given that the Court concludes that venue is proper in the District of Connecticut, the Court will not consider transfer under 28 U.S.C. § 1406(a), which provides that when a case laying venue in the wrong district is filed, the court may transfer it in the interests of justice.

**20.** Here, Wafa Reyad has not submitted any affidavit evidence in support of her motion, though she declares in her "Motion to Remove Defendant Wafa Reyad Due to Improper Venue" that she was never a principal owner or officer of WLCA and also was not a guarantor of the company.

ability of process to compel attendance of witnesses to testify at trial; (6) the weight afforded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by the forum familiar with the substantive law to be applied; (9) practical difficulties; and (10) the Court should also consider how best to serve the interests of justice, based on an assessment of the totality of the material circumstances. *See Schomann Int'l Corp.*, 35 F.Supp.2d at 213; *Wilshire Credit Corp.*, 976 F.Supp. at 181; *Wine Mkts. Int'l*, 939 F.Supp. at 179–80.

Here, the relevant transfer factors point towards this Court's retaining jurisdiction in Connecticut. First, the plaintiffs chose to bring this action in Connecticut, and that choice is given substantial weight. *See, e.g. Schomann Int'l Corp.*, 35 F.Supp.2d at 214. Further, as the plaintiffs note, Mrs. Reyad's home is in Fort Lee, New Jersey, only 19 miles from the Connecticut border. While Mrs. Reyad points out that the distance to Hartford, Connecticut (where this Court sits) is farther, the distance from Fort Lee to Hartford is not an unreasonable distance for her to travel and defend this action. In addition, Connecticut is where the majority of the witnesses are located, including the employees of FMCC who allegedly participated in fraudulent activity, and where FMCC (and presumably its records) are located. Based upon the language of the guaranty, it appears that this Court may be asked to construe it under California law, but this is not enough to tip the balance to transfer this action to this District of New Jersey.

In sum, it is in the interests of justice for this case to remain in Connecticut, and thus this Court declines to transfer it to New Jersey. In addition, because venue is proper for Mrs. Reyad in Connecticut and

her guaranty was needed to facilitate the business that is the subject of this case, the Court also declines to sever the claim against her.

C. "Defendant, Mostafa Reyad's Motion for Judgment of Dismissal: Or in the Alternative for Dismissal of the Original Complaint for Lack of Subject Matter Jurisdiction and for Other Relief Pursuant to Federal Rule of Civil Procedure 12" [Doc. # 82]; "Defendant, Wafa Reyad's Motion for Judgment of Dismissal: Or in the Alternative for Dismissal of the Original Complaint for Lack of Subject Matter Jurisdiction and for Other Relief Pursuant to Federal Rule of Civil Procedure 12" [Doc. # 83]

Both defendants Mostafa and Wafa Reyad also argue that this action should be dismissed for alleged defects in the plaintiffs' pleadings. First, they contend that when this Court returned the plaintiffs' amended complaint, ordering that it be resubmitted with a supporting memorandum, it left no complaint pending.[21] However, the plaintiffs' original complaint remains pending in this situation, and thus the Court will not dismiss this case on this basis.

Second, Mrs. Reyad argues that in the event the plaintiffs' original complaint is still pending, it should be dismissed for lack of subject matter jurisdiction because the plaintiffs have failed to adequately allege diversity of the parties. When such a motion is made, the party asserting jurisdiction bears the burden of alleging "a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations." *Linardos v. Fortuna,*

---

**21.** To date, the plaintiffs have not refiled another proposed amended complaint.

157 F.3d 945, 947 (2d Cir.1998). "As a general rule, if a Rule 12(b)(1) motion challenges subject matter jurisdiction facially, or based on the sufficiency of the pleadings, the allegations in the pleadings are taken as true and construed in the most favorable light for the complainant." *See Fisher v. Federal Bureau of Investigation,* 94 F.Supp.2d 213, 215 (D.Conn.2000) (citing *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992); *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993)). However, if the movant denies or controverts the plaintiff's jurisdictional allegations, the motion to dismiss is construed as a factual challenge and the allegations of the plaintiff do not control. *Id.* (citing *Cedars–Sinai,* 11 F.3d at 1583; *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 277–79, 57 S.Ct. 197, 81 L.Ed. 183 (1936)).

■■■■ Under Fed.R.Civ.P. 8(a)(1), a pleading must contain a "short and plain statement of the grounds upon which the court's jurisdiction depends." Here, the Court's jurisdiction is based upon diversity of citizenship under 28 U.S.C. § 1332(a)(1). In their original complaint, the plaintiffs allege "on information and belief" that both Mostafa and Wafa Reyad *reside* in "New Jersey and/or Connecticut." However, the citizenship of individuals, not their residence, must be pleaded. *See Everhart v. Huntsville Female College,* 120 U.S. 223, 224, 7 S.Ct. 555, 30 L.Ed. 623 (1887); *Canedy v. Liberty Mut. Ins. Co.,* 126 F.3d 100, 102–03 (2d Cir.1997). Under 28 U.S.C. § 1653, defective allegations of jurisdiction may be amended in situations where there are "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 831, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).[22] Here,

there are no apparent defects in the jurisdictional facts and the Reyads do not appear to challenge those facts, as it appears that the Reyads are citizens of either New Jersey or Connecticut and not California. Thus, the plaintiffs will be permitted to amend the complaint pursuant to 28 U.S.C. § 1653. *See Royal Ins. Co. of America v. Caleb v. Smith & Sons, Inc.,* 929 F.Supp. 606, 608 (D.Conn.1996). Mostafa and Wafa Reyad's motions to dismiss based on lack of subject matter jurisdiction accordingly are denied.

D. "Defendant Mostafa Reyad's Rule 12(B)(1) Motion to Dismiss" [Doc. # 101]

■■■■ Mr. Reyad argues that this action should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction because the Seller Contract between FMCC and IMI contains a forum selection clause which provides that "the Seller [FMCC] hereby agrees that any court action arising out of this Contract shall be brought in any court of competent jurisdiction within the State of California, County of Los Angeles." The plaintiffs argue that the clause should not be enforced because a trial in California would inconvenience litigants and witnesses, and because Mrs. Reyad may not be subject to personal jurisdiction in California. The plaintiffs also note that Mr. Reyad's motion should have been styled as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), rather than a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

1. Procedural issues

■■■■ The proper authority for a motion to dismiss based on the existence of a

---

**22.** The defendants do not challenge the amount in controversy requirement.

forum selection clause is not entirely certain. *See New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 28 (2d Cir.1997) (citing cases in the Second Circuit and other circuits that analyzed the issue in the context of motions to dismiss and transfer due to improper venue, motions to dismiss based on failure to state a claim upon which relief can be granted, and motions to dismiss for lack of subject matter jurisdiction); *Licensed Practical Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F.Supp.2d 393, 409 (S.D.N.Y. 2000) ("No authoritative guidance on these highly technical matters can be found in cases binding on this court, as neither the Supreme Court nor the Second Circuit has addressed these questions directly."). Despite this uncertainty, however, it is clear that a forum selection clause indicating that the parties agreed to bring suit in another forum does not oust the jurisdiction of the court to resolve the issue. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (discussing the enforceabilty of a forum selection clause in the context of an admiralty case involving a maritime contract); *Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509–10 (2d Cir.1998). Accordingly, the Second Circuit has observed that a motion to dismiss based upon a forum selection clause that is made pursuant Rule 12(b)(1), which pertains to lack of subject matter jurisdiction, is "somewhat misleading" given that a forum selection clause does not actually deprive a court of subject matter jurisdiction over an action. *New Moon*, 121 F.3d at 28 (noting that early cases in this circuit characterized the mechanism by which such clauses should be enforced as a "motion to decline jurisdiction"). Thus, Rule 12(b)(1) does not appear to be the appropriate vehicle for a motion to dismiss based upon the existence of a forum selection clause.

Instead, the Second Circuit has indicated that a lower court's decision to dismiss an action based on a finding of a forum selection clause is founded on Rule 12(b)(6). *See Evolution*, 145 F.3d at 508 n. 6 (citing *Lambert v. Kysar*, 983 F.2d 1110, 1112 n. 1 (1st Cir.1993)). Given this authority and the fact that Mr. Reyad concedes the applicability of Rule 12(b)(6), the Court will consider the defendant's motion under Rule 12(b)(6).[23]

■■■ The Court next must determine the proper law to apply in deciding whether to interpret and enforce the forum selection clause in this diversity case. Under the familiar rule set forth in the U.S. Supreme Court's holding in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), matters of procedure are determined by federal law, while matters of substance are determined by state law. The Second Circuit has indicated that federal law governs issues of venue

**23.** In this case, the plaintiffs concede that the Seller Contract contains a forum selection clause. Thus, the Court need not make any finding that such a clause existed, as in *Evolution*. As a result, it might have been more appropriate for the defendant to have moved to dismiss under Rule 12(b)(3) and 28 U.S.C. § 1406 based upon improper venue, or to transfer the case under 28 U.S.C. § 1404(a)(1). The Court notes that the plaintiffs' argument that the Court should decline to enforce the forum selection clause based upon the "interest of justice" suggests that they may be interpreting the defendant's motion as a motion to transfer under either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. However, as stated above, the parties have agreed that Rule 12(b)(6) applies, and the Second Circuit recently indicated that Rule 12(b)(6) is an appropriate vehicle through which to consider this issue, and thus the Court will consider the forum selection clause in that context.

and the enforcement of forum selection clauses in diversity cases, as these issues "are essentially procedural, rather than substantive, in nature." *Jones v. Weibrecht,* 901 F.2d 17, 19 (2d Cir.1990) (considering the clause in the context of a motion to dismiss for improper venue); *see also Northwestern Nat'l Ins. v. Donovan,* 916 F.2d 372, 375 (7th Cir.1990) (applying federal law); *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir.1988) (same). *But see Farmland Indus., Inc. v. Frazier–Parrott Commodities, Inc.,* 806 F.2d 848, 852 (8th Cir.1986) (applying state law), *abrogated on other grounds, Lauro Lines S.R.L. v. Chasser,* 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989); *Bryant Elec. Co. v. City of Fredericksburg,* 762 F.2d 1192, 1196 (4th Cir.1985) (affirming the district court's decision, which applied state law); *Alexander Proudfoot Co. World Headquarters L.P. v. Thayer,* 877 F.2d 912, 919 (11th Cir.1989) (applying state law); *Licensed Practical Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.,* 131 F.Supp.2d 393, 409 (S.D.N.Y. 2000) (questioning whether state law should govern the enforcement of forum selection clauses).

Unlike the agreement at issue in *Jones,* however, the Seller Contract in this case contains a choice of law clause in addition to the forum selection clause. This choice of law provision provides that the Seller Contract "shall be governed by, and construed and enforced in accordance with,

applicable federal laws and the laws of the state of California, without reference to conflict of laws principles." While some courts have determined that federal law still should be applied in similar situations, *see, e.g. Strategic Mktg. & Communications, Inc. v. Kmart Corp.,* 41 F.Supp.2d 268, 271 (S.D.N.Y.1998), it is not clear whether the choice of law provision would affect the application of federal procedural law in this case. Here, the parties have agreed that the issue should be considered in the context of a Rule 12(b)(6) motion to dismiss for failure to state a claim, a fact which seems to point towards the application of state law, rather than in the context of a motion to dismiss or transfer based upon improper venue, which may suggest that federal law is more appropriate.[24] At the same time, both parties cite to Second Circuit law to support their arguments, and the choice of law provision states that it shall be governed by "applicable federal law" as well as California law. Considering all of these factors, the Court will rely upon federal law in determining whether to enforce the forum selection clause. Nevertheless, even if California law were to apply, it appears that the analysis would be similar because courts in that state, like those in this circuit, follow the standard set forth in *M/S Bremen* in determining whether forum selection clauses should be enforced. *See, e.g., Smith, Valentino & Smith v. Superior Court,* 17 Cal.3d 491, 131 Cal.Rptr. 374, 551 P.2d 1206, 1209 (1976) (citing *M/S Bremen* ).[25]

---

**24.** The Court in *M/S Bremen* indicated that in a dispute involving an international forum, "[i]t is reasonable to conclude that the forum clause was also an effort to obtain certainty as to the applicable substantive law." 407 U.S. at 14 n. 15, 92 S.Ct. 1907.

**25.** Further, even if Connecticut law were to apply, it appears that it would apply California law pursuant to the choice of law clause. *See, e.g., Pepe v. GNC Franchising, Inc.,* 46

Conn.Supp. 296, 750 A.2d 1167, 1169 (2000) (applying the approach of the Restatement (Second), Conflict of Laws (1988), and holding that the law of the state chosen by the parties governs their contractual rights unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the choice, or when the application of the law of the chosen state would be contrary to the public policy of Connecticut).

2. Standard of Review

 Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen*, 407 U.S. at 10, 92 S.Ct. 1907. In other words, to invalidate a forum selection clause, the resisting party must overcome a "substantial presumption in favor of enforcement." *Sun Forest Corp. v. Shvili*, 152 F.Supp.2d 367, 380 (S.D.N.Y.2001) (noting also that the Second Circuit has a strong policy of enforcing forum selection clauses). Thus, the "correct approach" is to "enforce the forum clause unless the [resisting party] could clearly show that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud and overreaching." *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907. In particular, when the choice of forum is "made in an arm's-length negotiation by experienced and sophisticated business men, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *Id.* at 12, 92 S.Ct. 1907; *New Moon*, 121 F.3d at 29.[26]

 While there is a presumption in favor of the validity of a forum selection clause, "a party seeking to avoid enforcement of such a contractual clause is ... entitled to have the facts viewed in the light most favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard." *Id.* Here, as explained below, the plaintiffs concede that the Seller Contract contains a forum selection clause and that

it applies to them. Accordingly, there appear to be no issues of fact for this Court to resolve. Instead, it must determine whether the Court should decline to enforce the clause and whether the clause in the Seller Contract also applies to the claims under the Lending Agreement, which the parties both acknowledge does *not* contain a forum selection clause. Thus, an evidentiary hearing is not necessary on these matters.

Further, given that the parties have agreed that this motion is properly made under Rule 12(b)(6), the Court will consider the facts alleged in pleadings, and documents attached or incorporated by reference in the complaint. *See Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir.2000). In addition, the Court will consider the Seller Contract without converting the motion to dismiss into a motion for summary judgment. While it was not attached to, nor quoted in, the complaint, it is integral to the plaintiffs' claims and both parties were on notice of its contents. *See id.* (considering a cardholder agreement, account history and monthly statements not attached to a complaint); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (considering a prospectus not attached to a complaint).

3. Analysis

 The initial step in determining whether a forum selection clause should be applied is to consider whether the forum selection clause at issue is mandatory or

**26.** In light of the fact that the Court will consider the forum selection clause issue in the context of a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court will consider only the attached documents, such as the Seller Contract, that are incorporated by reference in the complaint. The Court notes that other courts considering

these issues as they relate to a motion to dismiss for improper venue under Rule 12(b)(3) have considered materials outside the pleadings. *See New Moon*, 121 F.3d at 30; *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 37 F.Supp.2d 186, 189 (E.D.N.Y.1998), *aff'd* 181 F.3d 82 (2d Cir.1999).

permissive. *See Bison Pulp & Paper Ltd. v. M/V Pergamos,* No. 89 Civ. 1392(MJL), 1995 WL 880775, *9 (S.D.N.Y. Nov.29, 1995). To make this determination, a court considers the wording of the agreement and applies ordinary principles of contract interpretation. *See id.* at *10. Here, the clause states that FMCC agrees that "any court action arising out of this Contract shall be brought" in a court of competent jurisdiction in Los Angeles County, California. While the word "shall" is considered a mandatory term, it may be used to confer both exclusive and permissive jurisdiction, depending on the context in which it is used. *Compare Bison,* 1995 WL 880775, at *11 (holding that a forum selection clause stating that any dispute "shall be decided" in the courts of the principal place of business of a vessel owner), *with John Boutari,* 22 F.3d at 53 (holding that a forum selection clause stating that disputes "shall come within the jurisdiction of the competent Greek courts" was permissive). In this case, the forum selection clause does not only concedes jurisdiction, as in *John Boutari,* but it requires that suits be brought in Los Angeles County, California. Thus, as in *Bison,* actions brought in any other forum than a court of competent jurisdiction located in that county would violate the terms of the Seller Contract. Further, while the plaintiffs resist enforcement of the clause, they concede that it "governs the claims by Plaintiff IMI set forth in Count Two of the Complaint." Accordingly, the Court finds that the forum selection clause contained in the Seller Contract is mandatory.[27]

■■■■■■■ A mandatory forum selection clause may be unenforceable when the resisting party shows that it would be unreasonable to give effect to it under the circumstances. *See Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1363 (2d Cir.1993). Forum selection clauses are unreasonable when:

(1) if their incorporation into the agreement was the result of fraud or overreaching; (2) if the complaining party "will for all practical purposes be deprived of his day in court," due to the grave inconvenience or unfairness of the selected forum; (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) if the clauses contravene a strong public policy of the forum state.

*Id.* (citations omitted).[28] Here, the plaintiffs do not argue that the forum selection

---

**27.** The Court notes that the forum selection clause, and in particular the fact that it contains language stating that "the Seller hereby agrees," suggests that only the defendants may be bound by the agreement. *See Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.,* 838 F.2d 656, 660 (2d Cir.1988) (holding that a forum selection clause binding only one party is enforceable). Nevertheless, here the plaintiffs concede that the clause applies to count two of their complaint and binds the parties unless the Court chooses not to enforce it.

**28.** Again the Court notes that California law on this issue is similar. In *CQL Original Prods., Inc. v. National Hockey League Players' Ass'n,* the court explained:

Given the significance attached to forum selection clauses, the courts have placed a substantial burden on a plaintiff seeking to defeat such a clause, requiring it to demonstrate enforcement of the clause would be unreasonable under the circumstances of the case. That is, that the forum selected would be unavailable or unable to accomplish substantial justice. Moreover, in determining reasonability, the choice of forum requirement must have some rational basis in light of the facts underlying the transaction. However, neither the inconvenience nor additional expense in litigating the selected forum is part of the test of unreasonability. Finally, a forum selection clause will not be enforced if to do so will bring about a result contrary to the public policy of the forum.

clause was incorporated as the result of fraud or overreaching; nor do they contend that the clause contravenes the public policy of the forum state. Instead, they maintain that the clause should not be enforced based upon the interests of justice, the "unique circumstances of the case," and because the parties have been litigating this case in Connecticut for many months. In particular, they argue that the Count Two-which concerns the Seller Contract-should be adjudicated together with the other claims arising from the Lending Agreement, which does not contain a forum selection clause. They also point out that most of the witnesses are located in this area, and note that if the entire actions were dismissed, they may not be able to bring the claims against Mrs. Reyad in California because she may not be subject to jurisdiction there. Finally, at oral argument on this motion, they maintained that transfer to California makes little sense given that the fraudulent activity alleged is similar under the all of the counts of the complaint.

Even when the facts are viewed in the light most favorable to them, the plaintiffs have not overcome their burden of showing that the forum selection clause should not be enforced; they have not shown that it is unreasonable for it to be given effect. Their principal reasons why the Court should not enforce the clause concern only inconvenience and general "unfairness." However, "[i]n recent years, the courts of this circuit have emphasized that a forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel." *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 10 (2d Cir.1995) (quotation omitted) (finding that a forum selection clause requiring that a cruise ship passenger bring suit in Greece was not unreasonable). Parties and witness may be required to travel to California for the litigation, but the plaintiffs have made no showing that the travel required would prevent them from bringing this action. Further, while the plaintiffs may feel that it is unfair to litigate in California after discovery has proceeded in this Connecticut action and as trial is approaching, they presumably have been aware from the outset that this clause was contained in the Seller Contract.

 "The scope of a forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties." *New Moon*, 121 F.3d at 33. Mostafa Reyad argues that the entire case should be dismissed because the Seller Contract is the principal agreement between his company and the plaintiffs, and the forum selection clause thus should apply to the Lending Agreement as well as the Seller Contract. He further argues that the forum selection clause is binding upon WLCA, even though it is not a party to the Seller Contract, because IMI is one its wholly-owned subsidiaries. While the plaintiffs argue that the two contracts should not be interpreted together, in oral argument before this Court they pointed out that WLCA and IMI are part of the same entity.[29]

39 Cal.App.4th 1347, 46 Cal.Rptr.2d 412, 415–16 (1995) (quotations and citations omitted).

**29.** On November 16, 2000, the plaintiffs filed a Motion to Substitute Plaintiff in which they indicated that the "bulk of the assets and liabilities of Indymac Mortgage Holdings, Inc. and Indymac, Inc. are now held by IndyMac Bank, F.S.B." That motion was denied for lack of a supporting memorandum and was never refiled. Further, in support of his motion to dismiss, Mostafa Reyad has provided a Form 10-Q report to the Securities and Exchange Commission indicating that a reorganization occurred. However, based upon the

■ The Court concludes that the forum selection clause should not be interpreted as pertaining to the Lending Agreement.[30] Neither the Seller Contract nor the Lending Agreement contains any language indicating that one was conditioned upon the other.[31] Under California law, "[s]everal documents concerning the same subject and made as part of the same transaction will be construed together even if the documents were not executed contemporaneously." *Myers Bldg. Indus. v. Interface Tech., Inc.*, 13 Cal.App.4th 949, 17 Cal.Rptr.2d 242, 252 (1993); *Boyd v. Oscar Fisher Co.*, 210 Cal.App.3d 368, 258 Cal.Rptr. 473, 478 (1989) (further noting that the documents need not refer to one another); *see also Summers v. Guss*, 7 F.Supp.2d 237, 239–40 (S.D.N.Y.1998) (holding that a documents containing a forum selection clause and a related note at issue in the case need not be enforced together because they constitute separate and distinct legal obligations). Here, however, the documents were neither executed contemporaneously nor do they refer to one another, and they do not appear to have been made as a part of the same transaction. The Seller Contract contained terms whereby IMI could, but was not required to, purchase mortgages that FMCC entered into. In contrast, the

Lending Agreement concerned the extension of a warehouse line of credit to FMCC to fund such mortgages. While both agreements were related to the mortgages at issue here, they differed in their subject matter and gave rise to different obligations. Thus, the Court concludes that they should not be construed together, and the forum selection clause contained in the Seller Contract is not applicable to the Lending Agreement.[32] Accordingly, while the counts that pertain to the Seller Contract are dismissed, the counts pertaining to the Lending Agreement will remain in this Court.

■ While the defendant requests dismissal of this case, there is some authority for permitting a court to *sua sponte* transfer a case because the existence of a valid forum selection clause. *See Licensed Practical Nurses*, 131 F.Supp.2d at 409 (considering in depth the issue of what authority consideration of a forum selection clause should be based). However, the Court declines to do so because it is not clear whether the forum selection clause requires transfer to the federal district court that encompasses Los Angeles County, California, or whether the clause requires this action to be brought in state court in that county.[33] Accordingly, the Court will dismiss Count Two of this case,

limited information provided, the Court is not able to properly discern the exact relationship between the plaintiffs in this case. Nevertheless, it is clear that they were two separate entities at the time the complaint was filed and at the time the parties entered into the contracts at issue.

30. The plaintiffs apparently assume in their memorandum that only their claims under the Seller Contract are at issue.

31. While courts are directed to apply federal law when interpreting forum selection clauses in diversity cases, the Court will look to California law in interpreting the relationship between the two agreements at issue, as both contain language indicating that they are to

be construed using the law of California, and this issue is clearly one of substantive law.

32. The defendant also argues that the contracts should be construed together because WLCA, the Indymac entity that entered into the Lending Agreement, is also a party to the Seller Contract. Indeed, "Independent Lending Corporation" is listed as a party to both contracts. However, it is still apparent from their terms that, although related, they did not concern the same transaction.

33. Although the defendant did not discuss the issue in his motion and memoranda, in light of his pro se status, the Court also has considered the possibility of dismissing the case in

and the portions of Count Four that are premised on the Seller Contract, both of which are directed only at Mostafa Reyad. The Court will retain jurisdiction over Count One against Mostafa Reyad, Count Three against Wafa Reyad, and the portions of Count Four against Mostafa Reyad that are premised on the Lending Agreement.[34]

### Conclusion

For the foregoing reasons, Wafa Reyad's "Motion to Remove Defendant Wafa Reyad Due to Improper Venue" [Doc. # 22]; Wafa Reyad's "Request to Dismiss" [Doc. # 32]; "Defendant, Mostafa Reyad's Motion for Judgment of Dismissal: Or in the Alternative for Dismissal of the Original Complaint for Lack of Subject Matter Jurisdiction and for Other Relief Pursuant to Federal Rule of Civil Procedure 12" [Doc. # 82]; and "Defendant, Wafa Reyad's Motion for Judgment of Dismissal: Or in the Alternative for Dismissal of the Original Complaint for Lack of Subject Matter Jurisdiction and for Other Relief Pursuant to Federal Rule of Civil Procedure 12" [Doc. # 83] are DENIED. "Defendant Mostafa Reyad's Rule 12(B)(1) Motion to Dismiss" [Doc. # 101] is GRANTED IN PART.

favor of litigation in California under the doctrine of forum non conveniens. *See Evolution,* 145 F.3d at 510 (directing the district court to consider the issue in the event that the court finds on remand that no contract existed or that the contract at issue did not include an agreement on forum selection). However, it appears that the case can not be dismissed on this basis. The first prong of the forum non conveniens inquiry is that "a court must satisfy itself that the litigation may be conducted elsewhere against all defendants." *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir.1998) (citation omitted). Here, it is not clear that Mrs. Reyad would be subject to personal jurisdiction in California, and thus that state cannot be considered an adequate alternative forum, absent some agreement to submit to jurisdiction there.

34. The fact that the Court concluded that Mrs. Reyad was subject to procedural waiver with respect to her motion to dismiss for lack of personal jurisdiction does not affect the analysis of the forum selection clause issue.